## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **GEORGE E. DALEY, III** | ) | **CASE NUMBER:** |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT –** |
| | ) | **JURY TRIAL DEMANDED** |
| **CHASE BANK USA, N.A.,** | ) | |
| **BANK O F AMERICA, N.A.,** | ) | |
| **EXPERIAN INFORMATION SOLUTIONS,** | ) | |
| **INC., and** | ) | |
| **EQUIFAX INFORMATION SERVICES LLC** | ) | |
| **Defendants** | ) | |
| | ) | **DECEMBER 17, 2009** |

### I. INTRODUCTION

1.  This is a suit brought by a consumer, George E. Daley III, against Defendants Chase Bank USA, N.A., Bank of America, N.A., Experian Information Solutions, Inc., and Equifax Information Services LLC, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

### II. PARTIES

2.  Plaintiff, George E. Daley, is a natural person residing in Canterbury, Connecticut. Plaintiff is a consumer as defined by the FCRA, 15 U.S.C. § 1681a(c), as defined by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(3), and as defined by Connecticut's Credit Collection Practices Act ("CCPA"), Conn. Gen. Stat. §36a-645(1).

3.  Defendant Chase Bank USA, N.A. ("Chase") is a National Association headquartered in Newark, Delaware. Chase is a furnisher of information to consumer reporting agencies as defined by the FCRA, 15 U.S.C. § 1681s-2 and is a creditor as defined by CCPA § 36a-645(2).

4.  Defendant Bank of America, N.A. ("BoA") is a National Association headquartered in Charlotte, North Carolina. BoA is a furnisher of information to consumer reporting agencies

as defined by the FCRA, 15 U.S.C. § 1681s-2 and is a creditor as defined by CCPA § 36a-645(2).

    5.   Defendant Experian Information Solutions, Inc. ("Experian ") is an Ohio corporation, located in California and is a consumer reporting agency as that term is defined by the FCRA, 15 U.S.C. § 1681a(f).

    6.   Defendant Equifax Information Services LLC ("Equifax") is a Georgia limited liability company, located in Georgia and is a consumer reporting agency as that term is defined by the FCRA, 15 U.S.C. § 1681a(f).

### III.  JURISDICTION

    7.   Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331 and 1337, and Fed. R. Civ. P. 18(a).

    8.   This Court has jurisdiction over the defendants because they regularly conduct business in this state.

    9.   Venue in this Court is proper, as the Plaintiff is a resident of Connecticut and the violations that are the subject of this litigation occurred within this State.

### IV.  FACTUAL ALLEGATIONS

#### A.    Facts as they relate to Chase:

    10. On October 1, 2008, Plaintiff contacted Chase to notify it of fraudulent use of his credit card.  Plaintiff closed his account that day.

    11. The next day, Plaintiff contacted Chase's fraud security department to reiterate the fraudulent use of his credit card.

    12. Plaintiff was redirected several times before a Chase representative was able to assist him.

13. Plaintiff explained that he was rarely home during the day and that his mail had been intercepted, which was why he was previously unaware of the fraud.

14. On October 10, 2009, Chase sent a letter to Plaintiff stating that it had attempted to contact him to gather additional information to assist with the fraud investigation, but that Chase could not reach him.  The letter requested that he contact Chase.

15. On October 21, 2009, Chase sent a letter to Plaintiff stating that his failure to contact Chase as requested resulted in the fraud claim being declined and that all charges were being applied to his account.

16. On that same day, the Plaintiff's wife, without Plaintiff's knowledge or authorization, completed the Affirmation of Unauthorized Use which was supplied by Chase.

17. Plaintiff's wife listed charges dating from October 20, 2006 through August 28, 2008.

18. Chase received this affirmation on October 24, 2008.

19. On November 11, 2008, Chase sent Plaintiff a letter alerting Plaintiff to a program that would assist Plaintiff in paying down the balance.  No reference was made to the fraud investigation.

20. On November 20, 2008, Chase sent Plaintiff a letter alerting him that his account was past due and requesting a payment to bring the account current.  No reference was made to the fraud investigation.

21. On December 15, 2009, Chase sent Plaintiff a letter alerting him that his account was past due and requesting a payment to bring the account current.  No reference was made to the fraud investigation.

3

22. On January 2, 2009, Plaintiff's counsel mailed Chase a letter alerting it to Plaintiff's representation by counsel and that Plaintiff continued his dispute of this account. The letter requested an investigation and requested that Chase contact counsel with any questions.

23. Chase received and signed for the letter on January 5, 2009.

24. On January 9, 2009, Chase contacted Plaintiff via telephone in an attempt to collect this debt.

25. Plaintiff informed Chase that he was represented by an attorney, to which Chase responded that it had no such information.

26. On January 10, 2009, Chase called Plaintiff four times.

27. On January 11, 2009, Chase sent a letter directly to Plaintiff stating that it had added counsel as "someone authorized to obtain information on your behalf."

28. On January 16, 2009, Chase, contacted Plaintiff's counsel asking for Plaintiff. When informed that it had reached Plaintiff's counsel, Chase responded that it had no notes indicating Plaintiff was represented by counsel and refused to discuss the account with counsel.

29. On February 3, 2009, Chase called Plaintiff and stated that it was unaware that Plaintiff was represented by an attorney.

30. On February 5, 2009, Chase called Plaintiff three times.

31. On February 6, 2009, Chase called Plaintiff two times.

32. On February 11, 2009, Chase called Plaintiff and stated it did not want to hear about Plaintiff's representation by an attorney.

33. On February 11, 2009, counsel called Chase to inquire about the fraud investigation. Chase responded that there was no authorization on file to speak with counsel and that counsel should fax authorization to a particular number and that it would take up to 48 hours to log it.

34. On February 16, 2009, Chase contacted Plaintiff's counsel again asking for Plaintiff. When informed that it had reached Plaintiff's counsel, Chase admitted that it had received a fax on February 12 but that it could take up to four business days to post the document received. Chase refused to discuss the account with counsel until the authorization was posted to the account.

35. On February 17, 2009, Chase sent a letter directly to Plaintiff stating he was 97 days past due and requested that Plaintiff contact Chase to help repair his credit.

36. On February 18, 2009, counsel called Chase to inquire about the fraud investigation. Chase responded counsel needed to speak with the Fraud Department. Counsel contacted the fraud department and was told that authorization needed to be faxed directly to that department as it could not share notes with other Chase departments and had no way to know that authorization was already noted on the account. Chase stated it would take five days to note the authorization once received. Counsel promptly faxed authorization to the Fraud Department.

37. On February 19, 2009, Chase contacted Plaintiff's counsel yet again asking for Plaintiff. When informed that it had reached Plaintiff's counsel, Chase responded that it had no notes indicating Plaintiff was represented by counsel. Chase stated there were no notes indicating any communication with counsel or that it should expect authorization to speak with counsel. Chase then stated it had a copy of a letter dated January 2, 2009, but that no authorization was included with the letter. Chase then stated that the authorization received on February 12 was not a valid authorization but that a supervisor would get the authorization received on February 18 approved but that it would take up to 5 days.

38. On February 20, 2009, Chase sent a letter directly to Plaintiff stating it was unable to process his request because the account was closed.

39. On March 2, 2009, Chase contacted Plaintiff's counsel stating that authorization to speak with counsel had been noted on the account. Chase then transferred counsel to the Fraud Department which then stated that there was no authorization noted on the account. Chase then stated that counsel could not speak with a supervisor until authorization was noted on the account.

40. Counsel then called the Chase Fraud Department back and was told that authorization to speak to counsel was noted on the account. The fraud department noted the fraud and transferred counsel to customer service where he requested copies of account statements to investigate the fraud with his client. Customer service stated the statements would be received within 10-12 days.

41. That very same day, Chase sent Plaintiff's counsel six months of the most recent account statements with a note that older statements would be sent under separate cover. As of the date of this complaint, counsel has not received those statements.

42. On March 16, 2009, Chase contacted Plaintiff's counsel once again asking for Plaintiff. When informed that it had reached Plaintiff's counsel, Chase refused to discuss the account because there was no authorization to speak with counsel noted on the account.

43. Later that same day, Chase contacted Plaintiff's counsel again asking for Plaintiff. When informed that it had reached Plaintiff's counsel, Chase refused to discuss the account because there was no authorization to speak with counsel noted on the account. Counsel stated that a notice of fraud had been logged at which point counsel was transferred to the fraud department and then transferred again to fraud investigation.

44. Chase fraud investigation stated that an investigation had occurred in October of 2008 and that it concluded that the wife had used the card. Chase stated that because it was a

6

common household, it could assume that the wife had authorization to use the card and would continue to hold Plaintiff liable for the balance due. Chase then faxed counsel a copy of the Affirmation of Unauthorized Use.

45. Counsel contacted Chase several times after receiving reviewing the affirmation to explain that the form was not filled out by Plaintiff, that his wife did not have authorization to use the card, that his wife filled out the affirmation without his knowledge or authorization and that the affirmation itself was fraudulent. Each time counsel called, he was told he had to speak with a particular investigator who never seemed to be present. Counsel was forced to leave voice mails which as of the date of this complaint have not been returned.

46. On March 17, 2009, Chase sent a letter directly to Plaintiff offering a settlement of 50% . The letter states that upon receipt of payment, Chase would stop collection calls and report the account as settled to consumer credit reporting agencies. The letter also stated, "simply talk to us about your situation and get it off your chest. Odds are, we have a way to help you get the weight off your shoulders."

47. On April 1, 2009, Plaintiff received a letter from a third party debt collector attempting to collect the full balance of the account.

48. On April 6, 2009, Chase sent directly to Plaintiff six months of the most recent account statements with a note that older statements would be sent under separate cover. As of the date of this complaint, Plaintiff has not received those statements

**B.     Facts as they relate to BoA:**

49. On February 9, 2009, Plaintiff's counsel mailed BoA a letter alerting it to Plaintiff's representation by counsel and that there was fraudulent use of this account. The letter requested the most recent 24 months of statements to allow Plaintiff a chance to investigate all charges

noting that Plaintiff would pay any legitimate charges. The letter also requested an investigation and that BoA contact counsel with any questions.

50. On February 12, 2009, BoA representative, R Jones, signed for the February 9th letter.

51. On February 20, 2009, BoA sent a letter directly to Plaintiff requesting he call BoA to make payment arrangements if he had not yet sent a payment.

52. On February 21, 2009, BoA called Plaintiff and admitted that it knew he was represented by counsel.

53. On February 23, 2009, BoA called Plaintiff three times.

54. On March 9, 2009, Plaintiff's counsel called BoA to follow up on the February 9th request for statements. BoA stated there was no authority on record and that it could be faxed.

55. After unsuccessfully attempting to fax authority, Plaintiff's counsel called BoA again and was told that written authority could only be mailed. Counsel mailed BoA written authorization along with a copy of the February 9th letter.

56. During that same call, counsel was told the February 9th letter was being reviewed by BoA's legal department who would contact counsel after it had completed a review. BoA also stated that statements could not be sent while the legal department was involved.

57. On March 11, 2009, BoA sent a letter directly to Plaintiff requesting he call BoA to make payment arrangements if he had not yet sent a payment.

58. On March 24, 2009, Plaintiff's counsel called BoA and verified that authorization was noted on the account. Counsel requested copies of statements, at which point he was transferred to the card services department.

59. BoA transferred counsel to, an outside law , Mann Bracken.

8

60. Mann Bracken stated it could not provide statements, at which point counsel was transferred back to card services, who upon learning that this was a fraud issue, transferred counsel to BoA's fraud department.

61. BoA's fraud department stated that there was no authorization on file to speak with counsel and that the authorization noted by the collection department was not valid for the fraud department.

62. BoA's fraud department then stated that the authorization was still being reviewed, that counsel needed to contact the fraud claim initiation department in three days.

63. On March 31, 2009, BoA sent a letter directly to Plaintiff stating it was notified of his dispute made the consumer credit reporting agencies. The letter further states that BoA attempted to contact Plaintiff but was unsuccessful. Lastly, the letter requested that Plaintiff contact BoA's Victims Assistance Unit to verify receipt of the notice.

64. That same day, BoA called Plaintiff stating it was unaware that he was represented by an attorney.

65. On April 1, 2009, counsel contacted BoA to follow up on the March 24th call. BoA stated that the authorization was not logged in the system and that it could take up to 30 days.

66. On April 3, 2009, Plaintiff received a letter from a third party debt collector stating that BoA assigned the account to it for collection.

67. On April 21, 2009, BoA sent a letter directly to Plaintiff stating that because he failed to contact BoA regarding the March 30th letter, it considered the matter resolved.

68. On April 23, 2009, counsel contacted BoA's Victims Assistance Unit who verified authorization to talk to counsel was noted on the account. BoA stated it would send form 151 to

9

report the fraudulent activity, and opened case # 264190. However, Boa refused to pull the account from a third party debt collector until the fraudulent activity was proven.

69. Later that day, BoA's Victims Assistance Unit called counsel stating that there was no authorization to speak with him. Consequently, BoA would not send form 151 and could not accept the fraud alert from counsel, stating that Plaintiff would have to call BoA directly to log the fraud.

70. That same day, counsel sent another copy of authorization to release records to counsel along with a copy of the February 9th letter. Counsel requested that BoA contact him when the authorization was properly logged.

71. On April 27th, BoA representative Grant Stryckning signed for the April 23rd letter.

### Facts as they relate to consumer credit report disputes:

72. On March 9, 2009, Plaintiff, via counsel, sent dispute letters to Trans Union, Equifax, and Experian disputing the debts reported by Chase and BoA.

73. On March 23, 2009, Trans Union provided a credit report to Plaintiff that showed both Chase and BoA debts as past due, absent any notice of a dispute from the Plaintiff.

74. On March 21, 2009, Experian provided a credit report to Plaintiff that showed both Chase and BoA debts as past due, absent any notice of a dispute from the Plaintiff.

75. On March 27, 2009, Equifax provided a credit report to Plaintiff that showed both Chase and BoA debts as past due. BoA included a notice of dispute, but Chase did not.

76. In April of of 2009, Plaintiff requested a credit line increase on his Citibank (South Dakota), N.A. credit card. Plaintiff was declined because of information reported on his Experian credit report.

10

77. On June 9, 2009, Plaintiff was informed that another credit card had lowered his limit due to information contained on his Equifax credit report.

### FIRST CAUSE OF ACTION
### Violations of Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* – Defendant Chase

79. Paragraphs 1-48 and 72-77 are herein incorporated.

80. Chase is a person as that term is defined by the FCRA, § 1681a(b), and a furnisher of information to consumer reporting agencies as contemplated by the FCRA, § 1681s-2.

81. Pursuant to FCRA § 1681s-2(b), Chase has a duty to perform a reasonable investigation in response to consumer disputes, such as those Plaintiff lodged with Trans Union, Experian, and Equifax. Chase knew or should have known, when it received notice of Plaintiff's dispute of the account from Trans Union, Experian, and Equifax, that Plaintiff disputed the account because it had received notice of Plaintiff's dispute via a letter dated January 2, 2009.

82. Chase violated FCRA § 1681s-2(b) by failing to properly investigate Plaintiff's disputes when requested to do so by Trans Union, Experian, and Equifax and failure to inform the consumer reporting agencies that Plaintiff disputed the debt in response to the investigation that Plaintiff disputed the account.

83. Chase's failure to adequately investigate and correct the disputed information and its continued reports to third parties stating Plaintiff owed Chase over $26,000 constitutes willful and/or negligent violations of FCRA § 1681s-2(b).

84. As a result of Chase's failure to adequately investigate and correct the disputed information, Plaintiff was denied a credit limit increase on a particular consumer credit card and had his credit limit decreased on another consumer credit card.

85. For its willful violations of the FCRA, Chase is liable to Plaintiff for actual damages,

11

attorney's fees, costs, and punitive damages pursuant to FCRA § 1681n.

86. For its negligent violations of the FCRA, Chase is liable to Plaintiff for actual damages, attorneys' fees, and costs pursuant to FCRA § 1681o.

**SECOND CAUSE OF ACTION**
**Violations of Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* – Defendant BoA**

87. Paragraphs 1-9 and 49-77 are herein incorporated.

88. BoA is a person as that term is defined by the FCRA, § 1681a(b), and a furnisher of information to consumer reporting agencies as contemplated by the FCRA, § 1681s-2.

89. Pursuant to FCRA § 1681s-2(b), BoA has a duty to perform a reasonable investigation in response to consumer disputes, such as those Plaintiff lodged with Trans Union, Experian, and Equifax.  BoA knew or should have known, when it received notice of Plaintiff's dispute of the account from Trans Union, Experian, and Equifax, that Plaintiff disputed the account because it had received notice of Plaintiff's dispute via a letters dated February 9, 2009, March 9, 2009, and April 23, 2009.

90. BoA violated FCRA § 1681s-2(b) by failing to properly investigate Plaintiff's disputes when requested to do so by Trans Union, Experian, and Equifax and failure to inform the consumer reporting agencies that Plaintiff disputed the debt in response to the investigation that Plaintiff disputed the account.

91. BoA's failure to adequately investigate and correct the disputed information and its continued reports to third parties stating Plaintiff owed BoA over $23,000 constitutes willful and/or negligent violations of FCRA § 1681s-2(b).

92. As a result of BoA's failure to adequately investigate and correct the disputed information, Plaintiff was denied a credit limit increase on a particular consumer credit card and had his credit limit decreased on another consumer credit card.

93. For its willful violations of the FCRA, BoA is liable to Plaintiff for actual damages, attorney's fees, costs, and punitive damages pursuant to FCRA § 1681n.

94. For its negligent violations of the FCRA, BoA is liable to Plaintiff for actual damages, attorneys' fees, and costs pursuant to FCRA § 1681o.

**THRID CAUSE OF ACTION**
**Violations of Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* – Defendant Experian**

95. Paragraphs 1-77 are herein incorporated.

96. Experian is a person as that term is defined by the FCRA, § 1681a(b), and a consumer reporting agency as contemplated by the FCRA.

97. Pursuant to FCRA § 1681i, Experian has a duty to perform a reasonable investigation in response to consumer disputes, such as those Plaintiff lodged with Experian.

98. Experian violated FCRA § 1681i by failing to properly investigate Plaintiff's dispute of the Chase and BoA accounts when requested to do so.

99. Experian's failure to correct the disputed information and its continued reports to third parties that Plaintiff owed a balance to Chase and BoA constitute willful and/or negligent violations of FCRA § 1681i.

100.    When preparing a credit report regarding a consumer, Experian is also required by § 1681e(b) of the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

101.    As a result of Experian's failure to comply with the mandates of the FCRA, Plaintiff was denied a credit limit increase on his consumer credit card.

102.    For its willful violations of the FCRA, Experian is liable to Plaintiff for actual damages, attorney's fees, costs, and punitive damages pursuant to FCRA § 1681n.

103.    For its negligent violations of the FCRA, Experian is liable to Plaintiff for actual

damages, attorneys' fees, and costs pursuant to FCRA § 1681o.

## FOURTH CAUSE OF ACTION
**Violations of Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* – Defendant Equifax**

104.    Paragraphs 1-77 are herein incorporated.

105.    Equifax is a person as that term is defined by the FCRA, § 1681a(b), and a consumer reporting agency as contemplated by the FCRA.

106.    Pursuant to FCRA § 1681i, Equifax has a duty to perform a reasonable investigation in response to consumer disputes, such as those Plaintiff lodged with Equifax.

107.    Equifax violated FCRA § 1681i by failing to properly investigate Plaintiff's dispute of the Chase account when requested to do so.

108.    Equifax's failure to correct the disputed information and its continued reports to third parties that Plaintiff owed a balance to Chase constitute willful and/or negligent violations of FCRA § 1681i.

109.    When preparing a credit report regarding a consumer, Equifax is also required by § 1681e(b) of the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

110.    As a result of Equifax's failure to comply with the mandates of the FCRA, Plaintiff's credit limit on a consumer credit card was decreased.

111.    For its willful violations of the FCRA, Equifax is liable to Plaintiff for actual damages, attorney's fees, costs, and punitive damages pursuant to FCRA § 1681n.

112.    For its negligent violations of the FCRA, Equifax is liable to Plaintiff for actual damages, attorneys' fees, and costs pursuant to FCRA § 1681o.

## FIFTH CAUSE OF ACTION
### Violations of state Creditor Collection Practices Act, Conn. Gen. Stat §§ 645 *et seq.* – Defendant Chase

113.    Paragraphs 1-48 and 72-77 are herein incorporated.

114.    Chase's conduct as described above violated the CCPA and regulations

promulgated thereunder by the Connecticut Department of Banking, as follows:

- a.  Chase violated Conn. Agencies Reg. § 36a-647-4(a)2 by contacting Plaintiff when it knew he was represented by an attorney.

- b.  Chase violated Conn. Agencies Reg. § 36a-647-5(5) by causing a telephone to ring and engaging Plaintiff in telephone conversation repeatedly knowing the natural consequence would be annoyance, abuse and harassment.

- c.  Chase violated Conn. Agencies Reg. § 36a-647-5(14) by refusing to make a reasonable effort to determine the validity of the debt the Plaintiff disputed.

- d.  Chase violated Conn. Agencies Reg. § 36a-647-6(2)(A) by falsely stating the character, amount, and legal status of the debt.

- e.  Chase violated Conn. Agencies Reg. § 36a-647-6(9) by failing to communicate that the debt was disputed.

- f.  Chase violated Conn. Agencies Reg. § 36a-647-6(11) by referring the account to an outside debt collector even though it was still disputed.

115.    For Chase's unfair acts, Plaintiff seeks his damages, statutory damages, and

attorney's fees and costs pursuant to the CCPA.

## SIXTH CAUSE OF ACTION
### Violations of state Creditor Collection Practices Act, Conn. Gen. Stat §§ 645 *et seq.* – Defendant BoA

116.    Paragraphs 1-9 and 49-77 are herein incorporated.

117.   BoA's conduct as described above violated the CCPA and regulations promulgated thereunder by the Connecticut Department of Banking, as follows:

      g.  BoA violated Conn. Agencies Reg. § 36a-647-4(a)2 by contacting Plaintiff when it knew he was represented by an attorney.

      h.  BoA violated Conn. Agencies Reg. § 36a-647-5(5) by causing a telephone to ring and engaging Plaintiff in telephone conversation repeatedly knowing the natural consequence would be annoyance, abuse and harassment.

      i.  BoA violated Conn. Agencies Reg. § 36a-647-5(14) by refusing to make a reasonable effort to determine the validity of the debt the Plaintiff disputed.

      j.  BoA violated Conn. Agencies Reg. § 36a-647-6(2)(A) by falsely stating the character, amount, and legal status of the debt.

      k.  BoA violated Conn. Agencies Reg. § 36a-647-6(9) by failing to communicate that the debt was disputed.

      l.  BoA violated Conn. Agencies Reg. § 36a-647-6(11) by referring the account to an outside debt collector even though it was still disputed, and by refusing to accept the Plaintiff's attorney's notice of fraud.

118.   For BoA's unfair acts, Plaintiff seeks his damages, statutory damages, and attorney's fees and costs pursuant to the CCPA.

WHEREFORE, Plaintiff seeks recovery of monetary damages; statutory damages pursuant to 15 U.S.C. § 1681n and § 1692k; punitive damages pursuant to 15 U.S.C. § 1681n; costs and attorney's fees pursuant to 15 U.S.C. § 1681n; damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681o; Statutory damages of up to $1,000 pursuant to Conn. Gen. Stat. § 36a-648; Attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-648; and such other relief as this Court deems appropriate.

**PLAINTIFF, GEORGE E. DALEY, III**


By: _____
Daniel S. Blinn, Fed Bar No. ct02188
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408  Fax. (860) 571-7457
dblinn@consumerlawgroup.com

Joshua Cohen, Fed Bar No. ct27939
Law Office of Joshua R.I. Cohen, LLC
2074 Park Street, 2nd Floor
Hartford, CT  06106
Tel (860) 233-0338  Fax (860) 233-2009
jcohen@debtorslawfirm.com